# In the United States Court of Federal Claims

No. 10-444C
(Filed April 16, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                  *
AFFILIATED CONSTRUCTION         *   RCFC 12(b)(6) motion for partial
GROUP, INC.,                    *   dismissal; Contract Disputes Act;
                                *   firm-fixed-price contract, 48 C.F.R.
           Plaintiff,           *   § 16.202-1; no adjustments for cost
                                *   experience; new claim based on
     v.                         *   different operative facts.
                                *
THE UNITED STATES,              *
                                *
           Defendant.           *
                                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Palmer Hoovestal*, Helena, Montana, for plaintiff.

*Kenneth D. Woodrow* and *Michael S. Macko*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk T. Manhardt*, Assistant Director, all of Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

Plaintiff Affiliated Construction Group, Inc. (ACG or Affiliated) alleges that the government breached a construction contract and that it is entitled to an equitable adjustment for increased costs and delays due to changes ordered by defendant. Compl. ¶ 2. The government has moved to dismiss two of Affiliated's claims under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), arguing that plaintiff has failed to state claims upon which relief can be granted. Affiliated concedes that one claim should be dismissed, but defends the other. As discussed below, in opposing the motion for partial dismissal the plaintiff has advanced a version of a claim that departs from that presented to the contracting officer and would thus be outside our subject-matter jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–7109 . Since the claim presented would not entitle plaintiff to relief, and its alternative version is not ripe for our review, the Court **GRANTS** the government's motion to dismiss two of the claims in the complaint.

## I. BACKGROUND[1]

Affiliated contracted to perform construction work for the Department of Defense at Ft. Meade, Maryland, under a design-build, fixed-price contract to renovate a 4,800 square-foot, power-distribution room. Compl. ¶¶ 1, 9–11, 13. The renovations included walls and finishes, lighting, air conditioners, piping, new power distribution/UPS (uninterrupted power source) systems and batteries, a new fire alarm system, and upgrades to the existing sprinkler system. *Id.* ¶ 10. Plaintiff alleged that because of changes in both the design requirements and in the work, ACG had to perform "a substantially different project than was originally contracted," which caused it to incur additional expenses. *Id.* ¶ 2. Plaintiff filed with the contracting officer a certified claim for an equitable adjustment, and, after the government denied the request, then filed a lawsuit under the CDA in our court. *Id.* ¶¶ 5, 7. Plaintiff requests judgment against the government in the amount of $644,629 and a 136-day extension of the contract duration. *Id.* ¶ 3.

The government initially filed a motion for partial dismissal of Affiliated's complaint for failure to state claims upon which relief can be granted. The claim that remains at issue concerns the cost of additional fire-mitigation items.[2] *See* Def.'s Mot. for Partial Dismissal (Def.'s Mot) at 1, 4. Plaintiff seeks reimbursement for costs of $50,199 and a seven-day extension of contract time for having to install increased quantities of smoke dampers, access doors, registers, grills, and diffusers beyond what it had estimated when pricing its bid. Compl. ¶¶ 36–38. In its bid, plaintiff had estimated that it would need to install six smoke dampers; twenty-three registers, grills, and diffusers; seventeen access doors; and eleven fire dampers. *Id.* ¶ 36. After ACG began the renovations, the required quantities increased to thirty-four smoke dampers; thirty-one registers, grills, and diffusers; and thirty-eight access doors, while the quantity of fire dampers decreased to four. *Id.* The government contended that this claim should be dismissed for failure to state a claim upon which relief can be granted because ACG entered into a firm-fixed-price contract for design/build services, and thus under 48 C.F.R. § 16.202-1, plaintiff assumed the "maximum risk" and full responsibility for all costs, including unexpected expenses if it underestimated the cost of the project. Def.'s Mot. at 4–8 (quoting 48 C.F.R. § 16.202-1).

Regarding the fire-mitigation equipment, the complaint alleges:

---

[1] The allegations in the complaint are taken as true for purposes of the government's motion to dismiss.

[2] The government also moved to dismiss ACG's claim for $3,446 lost production time due to snow. Def.'s Mot. at 1, 4, 8 (citing Compl. ¶¶ 44–45). Plaintiff has conceded that this is not recoverable under the contract, and accordingly that claim is **DISMISSED**. *See* Tr. (April 14, 2011) (Tr.) at 9–10, 27.

> These quantities represent a substantial increase in costs. ACG could not have anticipated the final quantities of the equipment and materials required for this project without the drawings during the bidding phase. The final quantities were based on code requirements and as such were not the design team's requirements. The quantities that were included in the original pricing allowed for a reasonable number of each item for this type of room. It was impossible to determine the amount of existing ducts and equipment that traversed and transversed this space prior to a complete and thorough site survey. The additional quantities represent a large difference in costs to the Project.

Compl. ¶ 37.

In its motion to dismiss, the government argued that plaintiff's contention amounted to a claim that plaintiff had underestimated the costs of performance, and in a firm-fixed-price contract the risk of such error was borne by the contractor. Def.'s Mot. at 4–8. In its initial response, and at oral argument, plaintiff's position was that the increase in the quantity of fire-mitigation devices was caused by the changes the government ordered in the UPS system from the 35 percent submission to the 75 percent submission, and thus the government was responsible for the increase in the costs. Pl.'s Br. in Opp'n to Mot. (Pl.'s Br.) at 4–9; Tr. 13–17.

During the hearing, the Court instructed plaintiff to file a supplemental brief addressing how the code requirements linked the UPS changes to the additional fire-mitigation equipment, and whether the contracting officer had the opportunity to consider that claim. Tr. at 24–26, 37; Order, ECF No. 13. In its supplemental brief, ACG stated that "[c]ontrary to what was previously argued in open court, it was not the UPS change that affected the increased fire smoke damper quantities." Pl.'s Supp'l Br. at 1. Plaintiff now argued that the reason for the increased quantities was that the *existing* duct work did not meet the code requirements, and therefore, ACG had had to upgrade the room to make it code-compliant. *Id*. at 1–2. Plaintiff further contended that because neither the use nor the square footage of the area changed during renovation, it was reasonable for it to assume that the existing ducts would already be code-compliant. *Id*. at 2, 5, 7. Affiliated argued that it "could not have anticipated" the lack of compliance, and the unexpected need to upgrade constituted a change for which ACG can claim an equitable adjustment. *Id*. at 7. Regarding the question of jurisdiction, plaintiff argued that because the claim presented to the contracting officer stated that the increased quantities were due to code requirements rather than design changes, the contracting officer had been given an opportunity to consider the basis of plaintiff's claim. *Id*. at 2, 4, 6. In response, the government argues that the ground articulated in ACG's supplemental paper constitutes a new claim within the meaning of the CDA, and

would thus be beyond our jurisdiction.[3] Resp. to Pl.'s Supp'l Br. (Def.'s Supp'l Br.) at 8–12.

## II. DISCUSSION

**A. Legal Standards – Jurisdiction and the CDA**

Whether a federal court has jurisdiction to decide the merits of a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Subject-matter jurisdiction may be raised at any time by a party, by the court on its own initiative, or on appeal. *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *James v. United States*, 86 Fed. Cl. 391, 394 (2009). When considering whether to dismiss a complaint, in whole or in part, for lack of jurisdiction, the court must presume the truth of all undisputed factual allegations and construe all reasonable inferences in favor of the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Forest Glen Properties, LLC v. United States*, 79 Fed. Cl. 669, 676 (2007).

Under the CDA, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1) (2012). A contracting officer's final decision on a valid claim is a jurisdictional prerequisite to the litigation of claims under the CDA in this court. *England v. Swanson Grp., Inc., v. United States*, 353 F.3d 1375, 1379 (Fed. Cir. 2004). The CDA does not require the use of any particular form or words for a writing to constitute a claim. *Engineered Demolition, Inc. v. United States*, 70 Fed. Cl. 580, 587 (2006) (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (quoting *Contract Cleaning Maint*, 811 F.2d at 592). The purpose of this requirement is resolution at the contracting officer level, an objective that would be hindered if the claim heard in court is substantially different from the one presented to the contracting officer. *See M. Maropakis Carpentry, Inc. v. United States,* 609 F.3d 1323, 1331 (Fed. Cir. 2010).

---

[3] The government also argued that plaintiff had waived this new ground for opposing its motion by failing to offer it in the initial response to the motion to dismiss. Def.'s Supp'l Br. at 3–5. In view of the fact that the government had the opportunity to respond to it, and considering that the plaintiff's new ground appeared in a Court-ordered supplemental brief, the Court will not treat it as waived. *See Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 909 (Fed. Cir. 2011) (citing *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir. 2007)).

This requirement, necessarily, also prohibits contractors from raising any *new* claims in court which were not first presented to the contracting officer. *Santa Fe Eng'rs, Inc., v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987); *see also Scott Timber*, 333 F.3d at 1365 ("An action brought before the Court of Federal Claims under the CDA must be 'based on the same claim previously presented to and denied by the contracting officer.'") (quoting *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987)). To determine whether a contractor's claim in court constitutes a "new claim," the court must assess "whether the new issue is based on the same set of operative facts" as the claim submitted to the contracting officer. *Foley Co. v. United States,* 26 Cl. Ct. 936, 940 (1992), *aff'd*, 11 F.3d 1032 (Fed. Cir. 1993). In making such a determination, "[i]f the court will have to review the same or related evidence to make its decision, then only one claim exists," but if the claim presented to the contracting officer requires examination of "a different or unrelated set of operative facts," then the claims are separate. *Kinetic Builder's, Inc. v. Peters*, 226 F.3d 1307, 1312 (Fed. Cir. 2000) (quoting omitted). When the claims differ in the underlying factual basis for relief, and when the claims require different kinds of proof, they are different claims for purposes of the CDA. *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 909 (Fed. Cir. 1990); *AAB Joint Venture v. United States*, 75 Fed. Cl. 414, 422–23 (2007).

In assessing the operative facts of the claim, the critical test for jurisdiction is "whether the scheme of adjudication prescribed by the CDA is undermined . . . by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim." *Cerberonics*, 13 Cl. Ct. at 418; *see also Croman Corp. v. United States,* 44 Fed. Cl. 796, 801 (1999); *ThermoCor, Inc. v. United States*, 35 Fed. Cl. 480, 489 (1996). In other words, the claim before the court cannot be said to arise from the same operative facts unless it is clear that the claim presented to the contracting officer was specific enough to give the officer notice of the basis of the claim and allow him to make an informed judgment about it. *Dodson Livestock Co. v. United States*, 42 Fed. Cl. 455, 462 (Fed. Cl. 1998); *see also Laidlaw Envtl. Servs. (GS) Inc.,* 43 Fed. Cl. 44, 51 (1999) (finding the contracting officer did not have adequate notice because the claim before the court was "at substantial variance to the issues presented to the contracting officer").

Two claims are the same if they "arise from the same operative facts, [and] claim essentially the same relief," even if they "assert differing legal theories for that recovery." *Scott Timber*, 333 F.3d at 1365. Thus, in *Scott Timber,* even though plaintiff "posed slightly different legal theories" in support of its CDA claim than had been offered in the submission to the contracting officer, the Federal Circuit nevertheless determined that the Court of Federal Claims had "correctly found that it had jurisdiction" over a claim which arose from the same set of operative facts as the claim presented below. *Id.* at 1365–66.

**B. Is Plaintiff Presenting a New Claim for an Equitable Adjustment?**

The claim submitted to the contracting officer concerning the additional fire-mitigation devices is almost identical to that contained in the complaint filed in our court. The contracting officer was told:

> ACG could not have anticipated the final quantities of the equipment and materials required for this project *without the drawings during the bidding phase*. The final quantities were based on code requirements and as such were not the design team's requirements. The quantities that were included in the original pricing allowed for a reasonable number of each item for this type of room. It was impossible to determine the amount of existing ducts and equipment that traversed and transversed this space prior to *a complete and thorough site survey*. The additional quantities represent a large difference in costs to the Project.

Pl.'s Supp'l Br. Ex. B, at 16–17 (emphasis added).[4]

The contracting officer rejected this claim due to the firm-fixed-price nature of the contract, also noting "that fire damper quantities were not formally established or set by the Government" and that he "found no evidence that the requirement had changed." Pl.'s Supp'l Br. Ex. A, at 11. After ACG brought this same claim in our court, *see* Compl. ¶ 37, defendant understandably moved for its dismissal, as the claim seemed to be based on actions of the plaintiff and not the government --- namely, ACG's underestimation of the number of items it needed to furnish to meet code requirements. *See* Def.'s Mot. at 5–7. As explained above, ACG initially (and mistakenly) tried to link the increase in these items to the alleged change in UPS requirements, and belatedly changed course to argue that the increased amounts of smoke dampers, registers, grill diffusers, and access doors were due to the existing duct work not already meeting code standards. *See* Pl.'s Supp'l Br. at 1–2, 5–7.

The question for the Court is whether this articulation of the claim differs sufficiently from that presented to the contracting officer such that it must be considered a new claim for CDA purposes. Although it is a very close question, the Court concludes that it does. Affiliated contends that the reason an equitable adjustment is warranted is that it reasonably assumed that an information technology equipment area it was to renovate already met code standards

---

[4] In citing the plaintiff's exhibits, the Court will follow the convention of referencing the internal page numbers of the excerpted documents contained in each.

concerning the required automatic fire and smoke dampers in the air ducts.[5] The key operative facts relating to this claim --- other than whether ACG was on notice that the existing area was not code compliant --- are whether the existing duct work contained an inadequate number of dampers and related equipment to meet the applicable code, and whether the increased numbers of these items that ACG installed were due to these preexisting deficiencies.

The problem facing ACG is that the claim as presented to the contracting officer and repeated in the complaint does not state that the room was unexpectedly found to violate code requirements. *See* Pl.'s Supp'l Br. Ex. B, at 16–17; Compl. ¶ 37. While plaintiff alleged that "final quantities were based on code requirements and as such were not the design team's requirements," Pl.'s Supp'l Br. Ex. B, at 16, this was not placed in the context of the site's failure to comply with code requirements. Instead, ACG was complaining that "without the drawings" and "prior to a complete and thorough site survey" it was not in a position to know "the amount of existing ducts and equipment." *Id.* at 16–17. Affiliated explained that its bid was based on "a reasonable number of each item for this type of room," *id.*, but failed to elaborate that this number was based on an assumption that an area that was already used to house information technology equipment would have already contained a certain amount of these items to comply with the National Fire Protection Association code. The claim as presented instead concerned the reasonableness of ACG's estimate of the amount of items needed compared to what was actually needed. Thus, the reference to code requirements appeared to mean that ACG had underestimated the volume of ducts and thus miscalculated the amount of fire-mitigation devices it needed to install to meet code standards for the renovation work --- there is no language to indicate that the existing ducts and equipment were insufficient to comply with the code.

One may, of course, infer from the language of the claim that ACG was really contending that the conditions of the site differed from those assumed in the contract. Perhaps the strongest motivation for drawing such an inference is that the claim, as written, does not seem to have anything to do with changes in the work ordered by the government, and would otherwise make no sense. But the Court is not aware of any doctrine requiring contracting officers to interpret claims in such a manner, and in any event this exercise would seem to confirm that the claim as presented failed to provide a "clear and unequivocal statement" that disclosed the "basis . . . of the claim." *Scott Timber Co.*, 333 F.3d at 1365.[6]

---

[5] Under the presumptions of regularity and of good faith conduct that must be extended to the government, *see Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 757–69 (2005), this would seem to be a proper basis for a claim.

[6] Indeed, as noted above, it was not so clear that plaintiff's counsel himself could recognize this basis for the claim when ACG initially opposed the government's

Moreover, plaintiff has not identified any language in the certified claim or in the complaint that would indicate that the basis for the claim concerning the fire-mitigation devices was the changed conditions portion of the changes clauses in the contract. *See* App. to Def.'s Mot. at 8; *id.* at 58 (incorporating by reference 48 C.F.R. § 52.243-05).[7] Yet that appears to be what plaintiff is suggesting, in arguing that the quantity of items priced in its bid "was based upon the belief that the existing conditions were already code compliant." *See* Pl.'s Supp'l Br. at 2. Even considering the claim, as presently articulated, to be based on differing site conditions than were assumed, the Court is persuaded that such claims are not merely different legal theories, but are predicated on different operative facts, compared to other grounds for an equitable adjustment. *See, e.g., Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 419–20 (distinguishing a defective specifications claim); *Foley Co.*, 26 Fed. Cl. at 939–40 (contrasting changes, differing site conditions, and variation in estimated quantities clauses).

In sum, ACG's new articulation of its claim concerning the fire-mitigation devices is not just a change in legal theories, but is based on different operative facts from those associated with the claim as presented to the contracting officer. This articulation would thus be a new claim that has not yet been considered by the contracting officer, and accordingly cannot come within our subject-matter jurisdiction.[8] The claim presented to the contracting officer, and contained in the complaint, concerns a risk that must be borne by the contractor in a firm-fixed-price contract, *see* 48 C.F.R. § 16.202-1, and thus cannot be the basis for relief in our court. The government's motion to dismiss the claim concerning fire-mitigation devices is **GRANTED**.

---

motion. *See* Pl.'s Br. at 4-6, 9-10.

[7] This portion of the clauses entitles a contractor to an equitable adjustment for increases of costs or time due to "subsurface or latent physical conditions differing materially from those indicated in this contract or unknown physical conditions at the site," App. to Def.'s Mot. at 8 (¶ G.8, § 352.236-9003(b)), provided the proper notice was given or waived, *id.* (§ 352.236-9003(c)). *See also* 48 C.F.R. § 52.243-5(b)-(d).

[8] Though the time to bring a new differing conditions claim before the contracting officer would have expired, *see* 41 U.S.C. § 7103(a)(4)(A), the Court notes that the CDA's statute of limitations is subject to tolling, *see Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 798 (Fed. Cir. 2009), and may well have stopped running once the claim was articulated in this lawsuit.

- 9 -

### III.  CONCLUSION

For the reasons stated above, the defendant's Motion for Partial Dismissal is **GRANTED**.  The claims concerning lost production time due to snow days, Compl. ¶¶ 44-45, and the increased amount of fire-prevention equipment, *id.* ¶¶ 36–38, are not claims upon which relief can be granted and are accordingly **DISMISSED** under RCFC 12(b)(6).  The parties shall file a Joint Status Report within fourteen days of the date of this order, proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

                                         s/ Victor J. Wolski
                                         **VICTOR J. WOLSKI**
                                         Judge